STATE OF NEBRASKA, EX REL. FRANK DAVEY, V. G. W. WILKINSON, RESPONDENT.

**Election: THE VOTE: MANDAMUS.** In an application for a mandamus against the incumbent of a county office. requiring him to deliver the books, papers, and moneys of the office to the relator, who claimed the office by virtue of a *tie* vote at the election, and a determination of such tie in his favor by lot, *Held*, That the certificate should show specifically the manner in which such lot was determined ; and where it is shown that the respondent was not present, and took no part in such determination, the certificate should show that the county clerk drew for him, and that in such drawing and the determining of such lot, the said clerk, for the respondent, was an actor, equally with the relator, and that such lot was conducted and determined in such manner as to preclude the possibility of forethought or design on the part of any of the actors or canvassers by which the determination of the lot might have been influenced to the disadvantage of the respondent.

ORIGINAL application for mandamus.

*W. E. Gantt* and *Joy, Wright & Hudson*, for relator cited: *State v. Jaynes*, 19 Neb., 161. *State v. Dodson*, 21 Id., 222. *People v. Kilduff*, 15 Ill., 492. *Harwood v. Marshall*, 9 Md., 83.

*Barnes Bros.*, *Mell C. Jay*, *John T. Spencer*, and *George H. Fair*, for respondent, cited : *People v. Olds*, 3 Cal.,. 175. *Fish v. Weatherwax*, 2 Johns. Cases, 217. *Commonwealth v. Common Council*, 7 Am. Law Reg., 362. *Ex parte Harris*, 52 Ala., 87.

COBB, J.

This is an original application in this court for a peremptory writ of mandamus, by Frank Davey, relator, against G. W. Wilkinson, respondent, and involves the *prima facie* title to the office of county treasurer of Dakota county.

The relator, by his petition, alleges that, on the 8th day of November, 1887, he was, and now is, and for a long time preceding had been, an elector of Dakota county.

That at the general election in and for said county, on the 8th of November, 1887, among other officers to be elected for two years, was that of county treasurer for said county.

That at the general election in and for said county, in and for the year 1885, the defendant, G. W. Wilkinson, was a candidate for said office, and was duly elected, qualified, and entered upon the duties of said office, and has since been acting as such county treasurer.

That at the general election held on the 8th day of November, 1887, the relator and the defendant were the opposing candidates for said office, and were voted for, they being the only candidates for said office for said year.

That afterwards the canvassing board of said county sat at the office of the county clerk of said county, and said vote was then and there duly canvassed, and as a result it was found that the relator had received for county treasurer 697 votes, and that the defendant, G. W. Wilkinson, had received for said office 697 votes, and said board of canvassers so returned.

·, That afterwards, there being a *tie* in the votes for said office, the relator and the defendant were notified by the county clerk to appear at his office on the 12th day of November, 1887, and draw lots to determine who was entitled to said office for the ensuing term.

That on said day the relator, in accordance with said notice, appeared at the clerk's office of said county, and the defendant failing to appear, the county clerk, in accordance with law, drew for him, and said lot was decided in favor of the relator.

That in accordance with said drawing the certificate of election was duly issued and delivered to the relator, who executed his bond as such county treasurer, which was duly approved and accepted by the county commissioners, and filed by the county clerk within the time required by law; that the oath of office was taken as provided by law; and that on the 5th day of January, 1888, the relator demanded of G. W. Wilkinson, the defendant, whom he was elected to supersede, all the records, books, papers, moneys, accounts, and effects belonging to said office, and the said defendant refused and failed to deliver the same. With a prayer that a peremptory writ of mandamus issue commanding the defendant forthwith to hand over to the relator all records, books, papers, moneys, accounts, and effects belonging to said office, and for his costs herein.

Defendant, by his answer, admits the allegations contained in the I., II., III. paragraphs of relator's petition. For answer to IV. paragraph, he denies each and every allegation therein contained, and avers the fact that at the general election, on the 8th day of November, 1887, he was a candidate for re-election on the republican ticket and the relator on the democratic ticket, and that one Thomas L. Griffey was a candidate on the prohibition ticket, and said candidates were the only ones voted for, for said office, at said election.

Defendant denies each and every allegation of the V.

paragraph in the petition, and avers the fact that no canvassing board ever canvassed the votes for the office of county treasurer for said county at the election of November 8, 1887, and further states that the county clerk of said county was a candidate for re-election on the same ticket with the relator; that he, with his deputy clerk, who was not a disinterested elector of said county, and one other person, pretending and assuming to be a canvassing board for the purpose of canvassing the votes cast at said election, met at the office of said county clerk and wrongfully and unlawfully pretended to canvass the said votes cast at said election for said office, and did, contrary to the facts, make return that the relator had received 697 votes for said office, that defendant had received 697 votes, and that T. L. Griffey had received a certain number of votes, the exact number defendant is not advised.

Defendant admits that he was notified to appear at the clerk's office of said county on the 12th day of November, 1887, to cast lots for the said office, but avers that said notice is wholly insufficient and is of no legal force and effect; and the defendant denies the allegations of the VI. paragraph, except the one above admitted, and defendant especially denies that there was a *tie* vote for said office at said election on the 8th day of November, 1887, and avers the fact that he received a majority of all the votes cast at said election, at least 700 votes, and that the relator only received 695 votes for said office, and that said pretended canvassing board made the said return in order to defraud the defendant of his election to said office.

Defendant denies each and every allegation in VII. paragraph, and avers the fact to be that, on the 12th day of November, 1887, the relator went to the office of the county clerk of Dakota county, and falsely pretending that there was a *tie* vote for the office of county treasurer of said county at the election on the 8th day of November, 1887, pretended to cast lots who should be entitled to the

office for the ensuing term ; that the defendant, relying on the fact that he had received a majority of votes at said election, refused to participate in the casting of lots ; and defendant denies that said county clerk drew lots for him in that behalf, and avers the fact to be that said clerk held two pretended lots in his hand, and that the relator, in collusion with the said clerk, and in pursuance of a plan between the said clerk and relator, did take one of the pretended lots from the hand of the said clerk, who at once declared that the relator had drawn the lot which entitled him to the said office, all of which was done wrongfully and unlawfully, in accordance with a previously arranged plan and conspiracy to defraud the defendant of his election to said office; that the same was so planned and carried out by the relator as aforesaid.

The defendant, answering to the VIII. paragraph, admits that said clerk issued and delivered a pretended certificate of election for said office to the relator, and also admits that the relator filed his bond, approved by the county commissioners, as set forth in his complaint.

Defendant further alleges that, relying on the fact that he had been elected by a majority of votes cast at said election, he also filed his bond as such treasurer, and took the oath of office as provided by law ; that he settled with the board of commissioners as provided by law; that his bond was accepted and approved by said board, and duly recorded, and that he became, on the 5th day of January, 1888, and thereafter was and is his own immediate successor in office for the ensuing term of two years from said date, and admits that he refused to deliver up the office. The defendant's answer contains other averments not material to be set forth.

At the hearing the relator presented a " certificate of election " from the county clerk under the " court of commissioners seal," dated November 12, 1887, that, " at a general election held on the 8th day of November, 1887.

G. W. Wilkinson and Frank Davey each received 697 votes for the office of the treasurer of Dakota county, in the state of Nebraska, and on the 12th day of November, A.D. 1887, in the clerk's office in said county, in the presence of the canvassing board of said county, the said tie was decided by lot, as required by law, in favor of the said Frank Davy, he is therefore duly elected treasurer of Dakota county, in the state of Nebraska."

There also appears on the files of the case, but by which party presented does not appear, nor is it remembered by the writer, the affidavits, respectively, of Geo. H. Fair, Mell C. Jay, Frank Davey, the relator, J. P. Twoohig, the clerk, and P. J. Keeffe, stating the manner of casting lots to decide the said *tie* vote for candidates for treasurer.

From a comparison of said affidavits, it appears that, on said 12th day of November, 1887, said board were in session, and considered together the manner of casting said lots, and different methods being suggested, the clerk suggested that as fair a method as any would be to draw straws, and said board decided to adopt said method, and the hour of 10 A.M having arrived, and said Davey being present, and said Wilkinson failing to appear, thereupon George H. Fair announced that the clerk would go into the vault alone and arrange two straws of different lengths, and when he came out he, Fair, would announce which one should win ; and thereupon said Fair took two straws out of a broom and cut them of different lengths and handed them to the clerk, who went into the vault, and said Fair closed the door, so that it was entirely dark in the vault, so that the clerk could not see the straws, and the clerk arranged the straws, and came out of the vault with the straws in his hand, concealed, excepting the ends which extended, and did not look at the straws, nor at any person, after coming out of the vault, nor at any person in the room, but held out his closed hand with the straws therein, and turned his eyes in the oppo-

site direction toward the wall, whereupon said Fair announced that the longest straw should win, and that Davey being present, and Wilkinson still failing to appear, said Davey should draw first; that when said Davey had drawn one of said straws, on comparison, it was found to be the longest straw, and thereupon said board declared that said Davey was elected to said office and entitled to the certificate of election, and said Fair wrote such certificate, the clerk signed the same and delivered it to said Davey.

The relator's cause consists solely in his certificate of election under section 49 of chapter 26 of the election law, as follows: "When there is a tie between two persons for an office to be filled by the county alone, or by any precinct therein, the clerk shall notify them to appear at his office at a given time to determine the same by lot before the canvassing board, and the certificate of election is to be given accordingly. If either party fail to appear or to take part in the lot, the county clerk shall draw for him."

The defendant's answer to the relator's petition avers that it was falsely pretended that there was a tie vote; that there was collusion between the relator and members of the board; that, therefore, he refused to participate in the casting of lots, and he denies that he was given sufficient notice, or that the county clerk drew for him.

Of this defense, the only material averments are, that he was absent, without sufficient notice, and that the clerk did not draw for him.

The relator not having been elected to the office, his application for a mandamus to place him in possession depends wholly upon the terms of his certificate, and the authority of the certificate rests equally upon its strict conformity to the essential requirements of the statute. Its validity is its identity with the mandatory requirements of the statute, precedent, and *prima facie*. The require-

ments of notice to the defendant, and on his failure to appear and take part in the lot, that the clerk draw for him, are not presumed to have been carried out unless certified on the face of the certificate itself. It was not the intention of the law to authorize the canvassing board to dispose of any office, but to decide a tie vote by lot, through chance and hazard. The board was but the means and contrivance to determine the tie, according to the letter of the law, without the action or influence of any man's choice or will. It ought, therefore, to appear from the certificate that the statute was strictly complied with, that each party to the controversy had an equal chance in the lot, that the result, from the method adopted, could not have been influenced by the action of any member of the board, but that it was independent of forethought or design. It was necessary to appear, from the certificate, that the defendant had a drawing in the lot, that in his absence the county clerk drew for him, and that the clerk lost and the relator won, without the possibility of anticipating the result.

The morality of this provision is not a question in the case, nor is its wisdom to be considered, but in discharging a public trust of peculiar importance under it, it is considered safest to require the strictest letter of the law to be observed.

The writ is therefore denied.

WRIT DENIED.

THE other judges concur.